UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JESSICA MAHER,

                              Plaintiff,                        **REPORT AND**
                                                                       **RECOMMENDATION**
     -against-
                                                                          CV 06-5073 (DRH) (ARL)

ALLIANCE MORTGAGE BANKING CORP., et al.,

                              Defendants.
----------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

        Plaintiff Jessica Maher ("Maher") brought this action against defendants Alliance Mortgage Banking Corp. ("Alliance") and Raymond Agoglia ("Agoglia") pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3 *et. seq.*, the New York State Human Rights Law ("NYHRL"), N.Y. EXEC. LAW § 296, and New York common law. On July 2, 2008, District Judge Hurley granted Maher's motion for an entry of default judgment against Alliance and referred the matter to the undersigned for a report and recommendation as to damages and attorney's fees. On March 13, 2009, Judge Hurley adopted the undersigned's Report and Recommendation that the inquest against Alliance be deferred until final adjudication of Maher's claims against Agoglia. Maher's claims against Agoglia were resolved by a Stipulation of Dismissal that was so ordered by Judge Hurley, who then referred the foregoing Alliance inquest to the undersigned. Maher was subsequently directed to serve and file papers in support of her damages claim against Alliance, and she has done so. Based on those submissions and as set forth below, the undersigned respectfully recommends that judgment be entered against Alliance in the amount of $208,582.18, comprising $170,000 in compensatory damages, $36,591.50 in attorney's fees, and $1,990.68 in costs and disbursements.

**BACKGROUND**

In July 2004 after graduating from high school, Jessica Maher became a full-time employee of Alliance at its corporate headquarters in Levittown. (Compl. ¶ 8.) Raymond Agoglia, a Senior Vice President of Alliance, reporting directly to Alliance's President, also worked at that office. (Maher Aff. ¶ 5.) Agoglia also supervised Maher's father, who was a salesperson at Alliance. (*Id.* ¶ 4)

During just over one year of employment at Alliance, Maher experienced repeated sexual harassment and forcible touching by Agoglia. In October 2004, while Maher was dressed as a punk schoolgirl for a work-sponsored Halloween party, Agoglia approached her to ask if the fishnet stockings she was wearing were thigh-highs, and if so, to see them. (*Id.* ¶ 9–11.) In February 2005, Agoglia approached Maher while she was hanging office decorations and smacked her on the buttocks three times. (Compl. ¶ 10.) At that time Maher asked him to stop harassing her, but in April 2005, while Maher was covering the reception desk, Agoglia approached her from behind to rub her shoulders and neck, forcing Maher to squirm out of his grip. (*Id.* ¶ 11.) Less than one month later, Agoglia again approached Maher at work and touched her on the buttocks while taunting her about pressing charges against him for his behavior. (*Id.* ¶ 12.)

In July 2005, Maher reported the incidents to her supervisor, Michelle Bello, who promised to investigate the situation, but Agoglia's conduct continued. (*Id.* ¶¶ 20–22.) While Maher tried to avoid Agoglia in the office, during the next few months he gestured towards Maher's breasts, touched her buttocks, blew in her ear, and grazed Maher's breast while he tried to place a cigar down the front of her shirt. (*Id.* ¶¶ 13–16.)

In September 2005, Maher wrote a letter to Bello asking what measures Alliance would take regarding her complaints. (Maher Aff. ¶¶ 28–29.) Agoglia was informed of the allegations against him and directed to apologize to Maher, but Alliance took no further action. (*Id.* ¶¶ 29–31.) In November 2005, Maher had Agoglia arrested for his behavior, and she resigned from her employment with Alliance, unable to remain in a hostile work environment. (*Id.* ¶¶ 32–33.)

Maher subsequently filed suit against Agoglia and Alliance. As Maher has reached a settlement with defendant Agoglia, and a default judgment has be entered against defendant Alliance, Maher now seeks to recover damages from Alliance for the emotional distress she suffered during her employment.

## ANALYSIS

A default constitutes an admission by the defendant of all well-pleaded factual allegations in the complaint, except those relating to damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993). In order to determine the damages award, a court may conduct an inquest by affidavit as long as the affidavits provide the court with a basis for the damages awarded. *Fustok v. Conti Commodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). The undersigned has received and considered the affidavits submitted by Maher, which provide the basis for the recommendations below.

**I. Compensatory Damages**

Maher seeks $2,000,000 in compensatory damages for her Title VII and NYHRL claims against Alliance. Prevailing plaintiffs in Title VII actions may recover compensatory damages. *See* 42 U.S.C. § 1981a(a)(1). Recoverable compensatory damages include damages for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of

life, and other nonpecuniary losses." *See* 42 U.S.C. § 1981a(b)(3). While the statute provides for recovery of these types of damages, it also sets limits for the amount recoverable by a plaintiff based upon the size of the defendant employer. *See* 42 U.S.C. § 1981a(b)(3)(A)–(D). Where an employer has more than 200 and fewer than 501 employees, as Alliance did (*see* Spaventa Dep. 7-9), the aggregate total of compensatory and punitive damages may not exceed $200,000. *See* 42 U.S.C. § 1981a(b)(3)(C).[1]

In the Second Circuit, where a plaintiff has succeeded on Title VII and NYHRL claims for emotional distress, courts have upheld a range of awards for compensatory damages, basing their decisions on whether emotional distress claim presented by plaintiff can be categorized as "garden-variety," "significant," or "egregious." *See Olsen v. County of Nassau*, 615 F. Supp. 2d 35, 46–47 (E.D.N.Y. 2009). In garden-variety claims, the evidence of emotional harm is limited to the plaintiff's testimony, which describes his or her injuries in vague or conclusory terms, and fails to relate the severity or consequences of the injury. *See id.* These claims typically lack extraordinary circumstances and are not supported by medical testimony. *See Id.* at 46. Significant emotional distress claims are based on more substantial harm or offensive conduct and may be supported by medical testimony, evidence of treatment by a healthcare professional, and testimony from other witnesses. *See id.* at 46–47. Egregious emotional distress claims yield

---

[1] Maher claims additional compensatory damages under NYHRL. While there is no limit on damages awards under NYHRL, Maher cannot recover for the same emotional distress injury under both Title VII and NYHRL. *See Wickham Contracting Co. v. Board of Educ.*, 715 F.2d 21, 28 (2d Cir. 1983) ("[A] plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery."); *see also Bender v. City of New York*, 78 F.3d 787, 793 (2d Cir. 1996). Because Maher's Title VII and NYHRL claims arise under the same injuries, and because Maher is entitled to a full recovery against Alliance under Title VII, the undersigned recommends that she is not entitled to additional recovery under her state law claims.

the highest awards and are warranted only where the employer's conduct was outrageous and shocking or affected the physical health of the plaintiff. *See id.* at 47.

Here, Maher was humiliated by Agoglia's repeated inappropriate touching, described above, as well as Alliance's failure to address her complaints. (Maher Aff. ¶ 26.) She was only eighteen years old at the time and extremely upset by the harassment she endured at work. (*Id.* ¶ 33.) She dreaded going to work, and had difficulty sleeping. (*Id.*) She reported that Alliance's conduct aggravated her irritable bowel syndrome and temporomandibular joint disorder, requiring her to seek medical attention. (*Id.* ¶ 34; Maher Aff., Ex. E, 5/15/06 Psychologist's Report, at 10.) Maher alleged that she also sought psychological counseling. A report based on her two psychologist visits in January and February of 2006 notes that at the time of her visits, she was suffering from clinical depression and anxiety. (Maher Aff., Ex. E, 5/15/06 Psychologist's Report, at 10–11.) The report concludes that "[t]here is little doubt that the months of sexual harassment suffered by this young woman have had a significant, adverse impact on her mental health." (*Id.* at 11.) The report suggested that Maher continue sessions with a psychologist to address her problems and symptoms. (*Id.* at 12.) Maher did not continue to receive psychological treatment, nor is there evidence that her emotional distress was ongoing. Further, in spite of her emotional distress, Maher was able to secure other employment, although the psychologist's report notes that she complained of being unable to focus in her new position. (*Id.* at 11.) Thus, in light of her allegations regarding the physical manifestations of her emotional distress and the corroborating psychological evaluation by a professional, the undersigned finds that Maher's emotional distress is properly categorized as significant.

While Maher's uncontested evidence of emotional distress is significant because her claims allege the need for medical attention, an award of $2,000,000 would be excessive. Courts in this Circuit have routinely found that awards ranging from $100,000 to $500,000 are not excessive for significant emotional distress damages. *See Port Auth. Police Asian Jade Soc. of New York & New Jersey Inc. v. Port Auth. of New York & New Jersey*, 681 F. Supp. 2d 456, 470 (S.D.N.Y. 2010) (awards of $250,000 to two plaintiffs was extremely large for Title VII discrimination claim, but did not shock the judicial conscience sufficient to warrant a reduction); *Olsen*, 615 F. Supp. 2d at 49 (awards of $500,000, $400,000 and $100,000 to three plaintiffs on Title VII and Section 1983 claims were not excessive); *Simmons v. New York City Transit Auth.*, No. CV 02-1575(CPS)(RLM), 2008 WL 2788755, at *9–10 (E.D.N.Y. July 17, 2008) (award of $150,000 was not excessive for Title VII retaliation claim); *Petroyits v. New York City Transit Auth.*, No. CV 95-9872(DFE), 2003 WL 22349676, at *5 (S.D.N.Y. Oct. 15, 2003) (award of $150,000 not excessive for Title VII discrimination claim). As Maher's damages are limited to $200,000 by statute and that amount falls within the typical range of damages awarded for significant emotional distress on Title VII claims, the undersigned therefore respectfully recommends that Maher be awarded $170,000 in compensatory damages.[2]

## II. Punitive Damages

A plaintiff may recover punitive damages on a successful a Title VII claim where the plaintiff "demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to [plaintiff's] federally

---

[2] So as to avoid double recovery, this award reflects the amount provided to Maher in her settlement with defendant Agoglia.

protected rights." 42 U.S.C. § 1981a(b)(1).[3] Although the uncontested allegations that Alliance acted with malice and reckless indifference entitle Maher to punitive damages, the total award of damages including punitive damages may not exceed $200,000. *See* 42 U.S.C. § 1981a(b)(3)(C). Because the undersigned recommends that Maher receive up to the statutory cap in compensatory damages, the undersigned recommends that the application for punitive damages be denied.

**III. Attorney's Fees**

Under Title VII, a district court may authorize the prevailing party to collect reasonable attorney's fees. 42 U.S.C. § 2000e-5(k). To aid the court in determining the amount of reasonable attorney's fees, a plaintiff must offer evidence that provides a factual basis for the award. *See Hensley v. Eckerhart,* 461 U.S. 424, 433-34 (1983). The Second Circuit has held that this evidence must be in the form of contemporaneous time records which specify for each attorney the date, number of hours worked and nature of the work done. *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983). Attorney's fees are determined by calculating the "presumptively reasonable fee," computed by multiplying a reasonable number of hours worked by a reasonable hourly rate. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 117–18 (2d Cir. 2007), *amended on other grounds,* 522 F.3d 182 (2d Cir. 2008). The presumptively reasonable fee is "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. N.Y. City Transit Auth.*, 575

---

[3] Punitive damages are not available under the NYHRL. *See Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 235 (2d Cir. 2000) (citing *Thoreson v. Penthouse Int'l, Ltd.*, 80 N.Y.2d 490, 496 (1992)).

F.3d 170, 174 (2d Cir. 2009) (internal quotations omitted). The court will award fees at the rate in the district in which the court sits unless a reasonable paying client would pay more to hire counsel from outside the district. *See id.* The Second Circuit has further held that the court must "apply current rates in the Eastern District for attorneys with the experience level of those [attorneys] who worked on the case." *Lochren v. County of Suffolk*, No. CV 08-2723, 2009 WL 2778431, at *3 (2d Cir. Sept. 3, 2009).

Maher's counsel has applied for attorney's fees for 121.9 total hours of work at hourly rates varying from $225/hour to $350/hour, depending on individual attorneys' experience, for a total of $39,618.68. Maher has submitted an affirmation by her attorney in support of this request for attorney's fees. (*See* Murray Aff.) The affirmation sets forth the experience of each attorney and includes an attachment reflecting contemporaneous billing records detailing the work performed and time spent by each attorney in the course of preparing Maher's case. The undersigned has reviewed the credentials of the attorneys set forth in the affirmation and finds that the rates sought by Maher's counsel are similar to those typically awarded in comparable cases in this district, and commensurate with counsel's skill and experience as litigation attorneys. *See, e.g.*, *Manzo v. Sovereign Motor Cards, Ltd.*, No. CV 08-1220 (JG)(SMG), 2010 WL 1930237, at *8 (E.D.N.Y. May 11, 2010) (awarding $350 to $500 per hour to partners and $200 to $300 per hour to associates in Title VII case); *Luca v. County of Nassau,* -- F. Supp. 2d --, 2010 WL 307027, at *7 (E.D.N.Y. Jan. 25, 2010) (awarding attorney with 25 years of experience $400 and senior associate $235 in civil rights case); *Gutman v. Klein,* No. CV 03-1570, 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009) (awarding between $300 and $400 for partners, between $200 and $300 for senior associates, and between to $100

8

and $200 for junior associates). Entries on the billing records do not appear to be duplicative or excessive in relation to the tasks Maher's attorneys performed. Although this case did not involve new issues of law, counsel was still required to speak to the client concerning her claims, obtain a right to sue letter from the EEOC, draft a complaint, prepare discovery demands, prepare and attend five depositions, and obtain a default judgment, among other tasks. (*See* Murray Aff., Ex F.) Thus, the times claimed for these tasks are not excessive. The contemporaneous billing records, however, include charges for expenditures other than attorney's fees. Further, Maher is entitled to fees at the attorneys' current rates. *See Lochren*, No. CV 08-2723, 2009 WL 2778431, at *3. Maher is therefore entitled to attorneys' fees calculated as set forth below.[4]

| Attorney | Rate ($/hr) | Number of Hours Worked | Total Fees |
|---|---|---|---|
| Christopher Murray | 350 | 69 | 24,150 |
| LaDonna Lusher | 245 | 36.7 | 8,991.50 |
| Justin Vogel | 300 | 6.2 | 1,860 |
| David Berg | 300 | 5.3 | 1,590 |
| | | **117.2** | **36,591.50** |

Accordingly, the undersigned respectfully recommends that Maher be awarded attorney's fees in the amount of $36,591.50.

**IV. Costs and Disbursements**

The contemporaneous billing records submitted by Maher in support of her application for attorney's fees itemize expenditures that are not strictly legal services including costs for

---

[4] The contemporaneous billing records reflect that an unnamed attorney with identification number 23 billed 4.7 hours at a rate of $300/hr on July 29, 2008 to research, review, and analyze case law regarding damages for default judgments in Title VII cases. *See* Murray Aff., Ex. F at 4. In her papers, Maher has made no indication of who this attorney is, or what his or her credentials are. Thus, the undersigned recommends denying Maher's request to award this $1,410 in attorney's fees, with leave to supplement the papers with an affidavit providing a biography of "attorney 23."

9

deposition transcripts, filing, process server, photocopying, legal research, FedEx, postage and document transport in the amount of $1990.68. Such expenditures are routinely recoverable. *See Bobrow Palumbo Sales, Inc. v. Broan-Nutone*, No. CV 04-5334(ETB), 2008 WL 1902109, at *9 (E.D.N.Y. Apr. 30, 2008). The undersigned finds that the balance of these costs is reasonable and should be awarded, as Maher has succeeded on her claims. However, in addition to the expenses itemized in the billing records, Maher seeks to recover an additional $1553.45 for filing of the Summons and Complaint, service of process, and the cost of deposition transcripts. As these costs appear to be accounted for in the billing records (*see* Murray Aff., Ex. F entries for 09/12/2006, 04/04/2007, 11/01/2007, 11/02/2007, 05/14/2008), the court finds this request duplicative. Maher is therefore entitled to costs and disbursements as set forth below:

| Description of Expenditure | Cost |
| --- | --- |
| Depositions | 1,113.45 |
| Filing Fees (Index Number) | 350 |
| Process Server (Pro-File Lawyer's Service) | 90 |
| Photocopying | 191 |
| Legal Research | 19.43 |
| FedEx | 101.94 |
| Additional Postage | 9.52 |
| Document Transport | 115.34 |
|  | **1,990.68** |

Accordingly, the undersigned respectfully recommends that Maher be awarded costs and disbursements in the amount of $1,990.68.

## RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that Maher be awarded $208,582.18 against Alliance, comprising $170,000 in compensatory damages, $36,591.50 in attorney's fees, and $1990.68 in costs and disbursements. Any objections to this

Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within fourteen days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
      August 9, 2009

                                                /s
                                      ARLENE ROSARIO LINDSAY
                                      United States Magistrate Judge